FILED

2011 Sep-22  PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SOUTHERNCARE, INC., | } | |
| | } | |
|     Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 11-AR-2797-S |
| | } | |
| ALISON BENNETT, | } | |
| | } | |
|     Defendant. | } | |

**MEMORANDUM OPINION**

Before the court are motions by plaintiff, SouthernCare, Inc.
("SouthernCare"), for a temporary restraining order and a
preliminary injunction against defendant Alison Bennett
("Bennett"). For the reasons that follow, the court concludes that
the motions are due to be denied.

**Facts and Procedural History**

SouthernCare is a hospice care provider with offices in
fifteen (15) states and its principal place of business in
Birmingham, Alabama. Bennett is a registered nurse who has worked
exclusively in the hospice industry for the past ten (10) years.
Bennett was the clinical director of SouthernCare's office in
Myrtle Beach, South Carolina until her departure on April 9, 2010.
Bennett is presently employed as the program director of
Compassionate Care Hospice ("Compassionate Care") in Myrtle Beach,
South Carolina. Bennett began working for Compassionate Care on
April 12, 2010.

Necessary to obtaining employment with SouthernCare, Bennett

signed an "Employee Confidentiality / Non-Solicitation / Non-Competition Agreement" ("agreement"), which provides, *inter alia*, that Bennett shall not compete with SouthernCare by working for any other employer engaged in hospice care for a period of two (2) years following the termination of her employment. The agreement is limited to any county in which Bennett actually performed work for or represented SouthernCare, or within one-hundred (100) miles of any and all SouthernCare locations. The agreement also stipulates that Bennett shall not solicit SouthernCare's patients or employees and shall not divulge SouthernCare's proprietary or confidential information. There arguably is an ambiguity in the non-compete language when it uses the word "or" (disjunctive) and not the word "and" (conjunctive). The contract, construed against SouthernCare, the draftsman, and construed against restraints of trade, and in order for the words to make sense overall, and as conceded by counsel for SouthernCare during oral argument, not only purports to preclude Bennett's current employment in Myrtle Beach for what remains of the two-year period, but would for two (2) years preclude her from **working for any competing entity within a 100-mile radius of any of SouthernCare's numerous facilities**. Counsel for SouthernCare conceded that this is the proper interpretation.

The parties contest whether Bennett's position as clinical director at SouthernCare included marketing and the procurement of

referrals. SouthernCare alleges that Bennett's "primary responsibility was to market the company in the community, and to solicit new customers from treating physicians and nursing homes (i.e. sales)." (Doc. 1, Ex. A, in plaintiff's application for temporary restraining order). SouthernCare further says, through the affidavit of Richard Duren, its Senior Vice President of Administration, that Bennett "was responsible for SouthernCare's marketing and obtaining patient referrals from healthcare providers" and that Bennett "had access to SouthernCare's valuable client and patient lists, contact information, and other sensitive information." (Doc. 1, Ex. A, plaintiff's application for a TRO, at Ex. 1, affidavit of Richard Duren). Bennett counters with her declaration that says she "headed the Clinical Department" and was involved in direct care to hospice patients, while a separate department - the Marketing Department - was responsible for all marketing and managing referral sources. (Doc. 3-1). Bennett states that she "was never involved in or trained in any of the marketing plans or processes that were utilized to bring in [] patients." (supplemental declaration of Alison Bennett, admitted during hearing held on 9/9/11). Additionally, Bennett states that she was "not aware of and did not have access to any 'customer lists,' anything marked 'Confidential' or 'Trade Secret,' or any other similar sales or marketing information." (Doc. 3-1).

It is also contested by the parties as to whether, in

Bennett's current position as program director with Compassionate Care, Bennett is responsible for soliciting patients and/or marketing and managing referral sources or whether she has done so. In its application for a TRO, SouthernCare merely alleges that Bennett, in her current position at Compassionate Care, has, at times unknown, recruited employees and patients of SouthernCare. (Doc. 1, Ex. A, in plaintiff's application for TRO).  To the contrary, Bennett says that she has **not** contacted any potential SouthernCare referral source, and has **not** contacted any patient or other client of SouthernCare since becoming employed by Compassionate Care. (Doc. 3-1).

In addition to injunctive relief, SouthernCare seeks liquidated damages, including costs and attorneys fees as provided for in the agreement.

The court held a purported evidentiary hearing on the motions for a TRO and for a preliminary injunction together on September 9, 2011.  The motion for TRO was subsumed by the motion for preliminary injunction, meaning that the court was hearing only a request for preliminary injunction.

## Discussion

A preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Forsyth County v. U.S. Army Corps of Engineers*, 633 F.3d 1032, 1039 (11th Cir. 2011)

(citations omitted).   Before the court can issue a preliminary injunction, even if there were live credible evidence to consider, the burden is on the moving party to demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to public interest. *Id.* (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).   The Eleventh Circuit has emphasized that "[f]ailure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009).

This is the first and only case in which this court (or perhaps any court) has been  called upon to grant a motion for preliminary injunction without a single live witness, and therefore, with no opportunity for cross-examination by opposing counsel or questioning by the court.  These parties disagree about material facts that cannot be decided simply upon conflicting affidavits.  Credibility is a crucial factor, here impossible to assess.  Under these highly unusual circumstances the court finds that SouthernCare has waived its right to a preliminary injunction, even if the court could take as true everything asserted in

SouthernCare's written materials, some of which are admitted.  *See Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947) ("Such conflicts must be resolved by oral testimony since only by hearing the witnesses and observing their demeanor on the stand can the trier of fact determine the veracity of the allegations...If witnesses are not heard the trial court will be left in the position of preferring one piece of paper to another.")

If not precluded procedurally by the absence of a meaningful evidentiary hearing, SouthernCare claims entitlement to injunctive relief based on the words of the contract, the existence of which is admitted by Bennett.  In appropriate circumstances, violations of a non-competition agreement provide a ground for injunctive relief.  However, the movant has the burden of persuasion to establish substantial likelihood of success.  In evaluating whether there is a substantial likelihood of success on the merits, the court first examines the agreement itself for its validity under Alabama law.  In order to be reasonable and thus enforceable under Alabama law, a covenant not to compete must meet <u>four</u> criteria: "(1) the employer has a protectable interest; (2) the restriction is reasonably related to that interest; (3) the restriction is reasonable in time and place; [and] (4) the restriction imposes no undue hardship." *Nationwide Mut. Ins. v. Cornutt*, 907 F.2d 1085, 1087 (11th Cir. 1990) (citing *DeVoe v. Cheatham*, 413 So. 2d 1141, 1142 (Ala. 1982)).  The validity of the covenant not to compete

-6-

signed by Bennett turns upon the third criterion noted in *Nationwide*, i.e., the agreement's time and place restriction - two (2) years in any county in which Bennett actually performed work or represented SouthernCare or [and] within one-hundred (100) miles of any SouthernCare location.   SouthernCare submits that this is a "clear and limited time frame" and geographically "limited in scope" and therefore, should be enforced.   Yet, SouthernCare has over 75 locations throughout 15 states.   The effect of an enforcement of this agreement by its terms would operate as a "blanket" prohibition against Bennett's ability to work for any employer engaged in the business of hospice care in a very wide geographical area. *See Chavers v. Copy Products Co., Inc. of Mobile*, 519 So. 2d 942, 944 (Ala. 1988) (holding non-competition aspects of employment contract void and unenforceable when they are blanket post-employment restraints).   Hospice care typically involves patient care in areas geographically limited to the provider's or the patient's residence, city, or county.   Under this agreement, SouthernCare attempts to cast a much wider net than could be considered necessary or reasonable to prevent undue competition by ex-employees.   Because the agreement is not reasonable as to geographic scope there is not a substantial likelihood of success to enjoin more broad non-competition.

Assuming *arguendo* that SouthernCare has met its burden to demonstrate a substantial likelihood of success, SouthernCare must

also demonstrate irreparable injury in the absence of an injunction. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of success because plaintiff failed to meet the burden of proving irreparable injury). "A showing of irreparable injury is 'the *sine qua non* of injunctive relief'" and the "absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id.* "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *U.S. v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Importantly, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

SouthernCare argues that if Bennett is allowed to continue working for its competitor, Compassionate Care, SouthernCare faces immediate and irreparable harm in the form of lost clients, the spread of valuable proprietary information, damage to relationships

-8-

with referral sources, and lost current and/or future income. SouthernCare simply says, "**[u]pon information and belief**, Bennett has recruited employees and patients of SouthernCare to Compassionate Care Hospice." (Doc. 1, Ex. A, plaintiff's application for TRO, at ¶ 11) (emphasis added). SouthernCare does not identify which employees or patients were allegedly or actually recruited by Bennett in violation of the agreement. Preliminary injunctions are not entered on hearsay. The record does not reflect any actual or imminent harm that will come to SouthernCare.

SouthernCare cites the Supreme Court of Alabama's opinion in *Ormco Corp. v. Johns*, 869 So. 2d 1109, 1116 (Ala. 2003), for the proposition that there is a "rebuttable inference of irreparable injury when 'a former employee **salesperson** is accused of violating an enforceable non-competition agreement by **selling** in the same geographic location in which he or she worked as an employee of the former employer.'" (Doc. 1, Ex. A, at plaintiff's motion for preliminary injunction (emphasis added)). However, at issue in this case is whether Bennett was, in fact, involved in any type of marketing or selling while at SouthernCare or whether she is currently involved with the same at Compassionate Care, i.e. whether Bennett was or is a "salesperson." Therefore, the court is not prepared to adopt a rebuttable inference of irreparable injury while there is a material dispute as to the nature of Bennett's former or present employment. Additionally, the agreement provides

-9-

for liquidated damages of three (3) times Bennett's salary as of the final date of employment in the event of a breach of the contract. This fact alone weighs against a finding of irreparable injury. *See Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) ("an injury is 'irreparable' only if it cannot be undone through monetary remedies").

At this time, there is no concrete evidence to show that SouthernCare is suffering serious harm or facing imminent injury, nor has SouthernCare demonstrated a threat of continuing irreparable harm if Bennett is not stopped. SouthernCare's speculative allegations of irreparable injury are unconvincing. A development of the facts will be necessary to demonstrate the level of injury, if any, to SouthernCare. At this strange juncture the court has no way to make important credibility determinations, particularly when major assertions are based only on information and belief. Because proof of irreparable injury is an indispensable prerequisite to the award of a preliminary injunction, SouthernCare is not entitled to one. *See Siegel*, 234 F.3d at 1179.

Because SouthernCare has failed to establish a substantial likelihood of success on the merits or that irreparable injury will be suffered unless the injunction issues, it is not necessary for the court to address any other problems faced by SouthernCare, but there are two others deserving of mention. First, the degree of

-10-

hardship on Bennett may well be more disastrous to her than the harm to SouthernCare.  If she is out of work at the only job she knows, she may become one of the permanently unemployed.  Second, Bennett left the employ of SouthernCare on April 9, 2010, and SouthernCare did not file suit until August 5, 2011.  The complaint is silent as to what, if anything, happened between April 2010 and August 2011 *vis-a-vis* the parties, or what steps SouthernCare took, if any, to protect its rights during that prolonged period while Bennett was competing right down the street.  After all, Myrtle Beach is not a major metropolis.  SouthernCare is seeking injunctive relief over sixteen (16) months after Bennett left SouthernCare and began working for its competitor.  Bennett has a sufficiently persuasive defense of laches (a defense raised in her answer) to preclude the issuance of a preliminary injunction.  It may even prove dispositive.

### Conclusion

For the foregoing reasons, SouthernCare's motions for temporary restraining order and preliminary injunction will be denied by separate order.

DONE this 22nd day of September, 2011.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

-11-